The cross-examination of defendant upon his books was fully permitted. The evidence disallowed at folios 270 and 272 seems to be immaterial. There is no exception at folio 272. The other rulings complained of do not show error on the part of the referee.

There can be no question as to the filing of the referee's report. The Code expressly states that the notice to terminate the reference, when a report is not filed or delivered within 60 days, may be served before the report is filed or delivered. This was not done in this case. The report was filed before the notice was given. The case of *Little* v. *Lynch*, 99 N. Y. 112, 1 N. E. Rep. 312, relied upon by appellant, was a case in which the notice was given before the report was delivered or filed.

The stipulation to pay referee's fees at the rate agreed upon, which stipulation is manifested by an entry in the minutes, is valid. Code, § 3296. The case of *Bank* v. *Tamago*, 77 N. Y. 476, relied upon by appellant, was a decision under section 313 of the former Code. A like stipulation as to stenographer's fees would seem to be equally effectual. There is satisfactory evidence in the case that such stipulations were made. The judgment and orders appealed from should be affirmed, with costs.

BISCHOFF, J., concurs.

LARREMORE, C. J., (*concurring.*) No error appears for which we can grant a reversal. There was some evidence to support the referee's finding reducing plaintiff's claim; and, on an appeal from the city court, this court has no power to reverse a judgment because we might deem that the weight of evidence was against the referee's decision. *Farley* v. *Lyddy*, 8 Daly, 514. The facts to support defendant's counter-claim were not controverted, and we think the referee correctly held that they made out a good cause of action. The statute of frauds does not apply. The original credit was given, not to Dugan, but to plaintiff. The notice of plaintiff's election to end the reference was nugatory, because, although more than 60 days had expired since the cause was submitted, said notice was not served until after the report had been actually delivered. Code, § 1019; *Gregory* v. *Cryder*, 10 Abb. Pr. (N. S.) 289. The judgment appealed from should be affirmed, with costs.

---

*In re* STEARN'S ESTATE.

(*Surrogate's Court, Allegany County.*    March 14, 1890.)

EXECUTORS AND ADMINISTRATORS—TEMPORARY ADMINISTRATORS.

The executor named in a will is not the proper person to appoint as temporary administrator during a contest of the will, when he is the largest beneficiary under the will, is the main proponent, is charged by the contestants with having influenced the testator, has large unsettled transactions with the estate, and his relations with certain members of testator's family are unfriendly.

Application for the appointment of a temporary administrator, during the pendency of a contest of the will of John Stearns.

*Hamilton Ward,* for proponents. *Dolson & Orcutt,* for contestants. *L. C. Van Fleet*, special guardian.

NORTON, S. The will, the subject of this contest, gives to a son, the executor named therein, the principal part of the estate of the decedent, charging him with the maintenance of the widow, the payment to her of a small annuity, and the payment of some inconsiderable legacies to the other heirs of the decedent. All the parties interested, except the executor and the widow, are contesting the probate of the will, and all concede the necessity of the appointment of a temporary administrator; the proponents urging the appointment

of the executor, while all the contestants object, and urge that some disinterested man should be named.   The contest has developed considerable bitterness, and the position of the contending parties towards each other is that of extreme hostility; but no evidence of any incompetency or unfitness, aside from the hostile position of the parties, has been given, so we are led to an examination of the authorities bearing on this question.   In the case of *Crandall* v. *Shaw*, 2 Redf. Sur. 100, it was held to be improper to appoint a person who was a party to the litigation, although he was not personally interested in the result, and that none but a disinterested person should be named.   The same had been held in a prior case, (*Mootrie* v. *Hunt*, 4 Bradf. Sur. 173,) and the former case followed the holding of the latter.   In the case of *Howard* v. *Dougherty*, 3 Redf. Sur. 535, it was held that an executor of an estate should not be appointed, where he has any hostile interest.   The court says: "A collector and receiver represents the interests of the respective legatees, if the will shall be admitted to probate; but, in case of rejection, he represents the heirs and next of kin, and should not be appointed, when it is apparent that, in respect to the probate of the will, he is in hostility to any party he must thus represent, except upon the consent of the respective parties, or for some very special reason rendering him indispensable in the proper administration of the estate."   The case of *Cornwell* v. *Cornwell*, 1 Dem. Sur. 1, was decided on the authority of the case last cited; the court there saying that he had several times held in accordance therewith, and holding that the appointment of an executor charged with unduly influencing the testator should not be made.   The holding of the courts seems to have been uniform in refusing to appoint an executor pending a contest in which he is largely interested, and where he is in a hostile position to, and his appointment is opposed by, the contestants.   An examination of the later cases show that they do not differ from this view.   In the case of *Jones* v. *Hamersley*, 2 Dem. Sur. 286, the executor was not personally interested in the estate, and his appointment was opposed on the sole ground that he was named as executor, and the court in that case said: "Where an application for the appointment of one named as an executor has been opposed on account of his unfriendly relations with contestants, or of his alleged undue influence in shaping the testamentary dispositions of the decedent, or for some like cause, such application has often been denied."   But where the only ground of opposition is the fact that he will be entitled to letters testamentary if the paper in dispute shall be established as a will, he should be appointed.   That case does not seem to change, but reaffirms, the rule.   The case of *Haas* v. *Childs*, 4 Dem. Sur. 137, was where the widow applied for temporary letters, and only one person objected, and his interest was small, and he the only contestant of the will.   Considerations of economy induced the court to grant letters to her.   The *Case of Bankard*, 19 Wkly. Dig. 452, does not vary the rule, but holds that there is no arbitrary principle or provision of law preventing the appointment of a person named as executor in a will over which there is a contest.   There seem to be no cases reported where, under the circumstances of the matter before us, the executor has been appointed the temporary administrator.   He is the largest beneficiary under the provisions of the will, is the main proponent, is charged by the contestants with having influenced the decedent, and also that he has now large unsettled transactions with the estate, and the relations existing between him and the other members of the family are of a very unfriendly character.   It is true the widow is in sympathy with him in this matter, but this does not overcome the settled rule, particularly as the portion to which she would be entitled should the will not be established will be greater than the amount provided for her therein.   So, in any event, she must be as well provided for.   Following the long-established precedents, I am constrained to come to the conclusion that, under the circumstances, the appointment of the executor named in the will would not be proper; and for the same reason the widow

should not be appointed. The parties to the contest may agree upon some person to receive the appointment, and, if they are unable so to do, the court will appoint. A bond in the sum of $20,000 will be required.

---

### WOODWORTH v. HODGSON et al.

*(Supreme Court, General Term, Fifth Department.   April 11, 1890.)*

**1. FRAUDULENT CONVEYANCE—STOCK OF GOODS—CHANGE OF POSSESSION.**
    A father having guarantied the business indebtedness of his son, a bill of sale of the son's stock in trade was executed and delivered to the father about 7 o'clock in the evening. The parties then went to the store, and shortly thereafter the father locked the door, and handed the key to his son. Before the son opened the store the following morning it was seized under executions against him. *Held*, that whether there had been an actual change of possession was a question for the jury.

**2. CHATTEL MORTGAGES—BILL OF SALE.**
    The testimony of both father and son showed that there had been no conversation between them in regard to the transaction, except that the former should be "secured," and there was no evidence that there had been any bargain between them by which the one should sell and the other buy the property. *Held*, that the instrument, though absolute in its terms as a bill of sale and delivered by the son to the father, would be regarded as a chattel mortgage only.

Appeal from Monroe county court.

Action by Clark Woodworth against Thomas C. Hodgson and another, originally brought in the municipal court of the city of Rochester, and taken by appeal to the county court, where there was a verdict and judgment for plaintiff, from which defendants appeal.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*M. W. Cooke* and *William B. Hale*, for appellants. *J. M. Dunning*, for respondent.

MACOMBER, J. This action is brought against the defendants, who are respectively the sheriff and deputy-sheriff of Monroe county, to recover for the value of a certain stock of groceries claimed by the plaintiff, and alleged to have been converted by the defendants to their own use. The answer justifies the seizing and disposal of the goods under a judgment and an execution properly issued, the particulars of which it is not necessary to detail. The position of the defendants is that the property, the value of which is thus claimed by the plaintiff, was fraudulently disposed of by one W. A. Woodworth, a son of the plaintiff. The case turns upon this issue. William A. Woodworth had resided with his father in the town of Gates, adjoining the city of Rochester, when, in the month of November, 1887, he began the business of conducting a grocery store on the corner of Kent and Platt streets, in the city of Rochester. To enable the son to start in business, the plaintiff executed for his benefit two promissory notes, in the sum of $600, upon which the money was obtained for the use of the son. Subsequently the plaintiff signed two letters of credit to certain wholesale groceries in the city of Rochester, by which the son was permitted to purchase goods to the amount of $300, and the payment of the same was guarantied by the plaintiff. Within a short time the fact was developed that the business was unremunerative, and this was known to the plaintiff. It continued, however, until the evening of the 23d of July, when a bill of sale, absolute in its terms, of all of the property of the son, was executed and delivered to the plaintiff. Thereupon, as is claimed, in his behalf, the plaintiff took possession of the store and its contents. It is at this point where the two questions in the case come in. At the close of the plaintiff's case, as well as at the close of the whole testimony, a motion was made in behalf of the defendants in the one instance for a nonsuit, and in the other for a direction of a verdict for the defendants, upon the ground that the taking of the property by the plaintiff under the bill of sale was fraudulent, and that there had been no transfer of possession